HEATWALL, Appellee and Cross–Appellant,

v.

VILLAGE OF BOSTON HEIGHTS, Appellant and Cross–Appellee.

[Cite as *Heatwall v. Boston Hts.* (1995), 101 Ohio App.3d 290.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16863.

Decided Feb. 22, 1995.

*Richard Dobbins*, for appellee and cross appellant.

*Lemuel Green*, for appellant and cross appellee.

SLABY, Judge.

The village of Boston Heights appeals from a trial court judgment ordering it to pay Robert Heatwall, an ex-employee of Boston Heights, $8,748.34 in accrued but unused sick leave. Boston Heights claims that it was not obligated to compensate Heatwall for unused sick leave. Heatwall cross-appeals, arguing that the trial court abused its discretion by refusing to award him an amount for accrued compensatory time. We reverse as to Boston Heights' appeal and affirm as to Heatwall's cross-appeal.

This case, which is currently before this court for the fourth time,[1] arises from Boston Heights' firing of Heatwall, who was a police captain. The only remaining issues in this appeal are whether Heatwall should be compensated for (1) unused sick leave and (2) allegedly accrued compensatory time. The trial court found that Heatwall was entitled to full compensation for 770.1 hours of accumulated sick leave. The court also found that Heatwall did not provide sufficient evidence that he had worked any compensatory time for which he had not already been compensated.

Both sides have appealed from the judgment. Boston Heights assigns two errors; Heatwall, one.

### Assignments of Error

"I. The court erred in finding that Boston Heights had adopted a policy permitting its employees to receive payment upon termination of employment for unused sick leave.

"II. The court erred in granting judgment for the full value of all sick leave accumulated by Robert Heatwall."

In its assignments of error, Boston Heights asserts that it is not legally required to compensate Heatwall for the 770.1 hours of unused sick leave which Heatwall accrued during his employment. Heatwall cites the following cross-

---

1. See *Heatwall v. Boston Hts.* (1990), 68 Ohio App.3d 96, 587 N.E.2d 440; *Heatwall v. Boston Hts.* (Nov. 20, 1991), Summit App. No. 15150, unreported, 1991 WL 244499; *Heatwall v. Boston Hts.* (June 15, 1994), Summit App. No. 16563, unreported, 1994 WL 263278.

examination testimony by Raymond McFall, the Boston Heights mayor, as proof that Boston Heights had adopted a policy of paying employees for unused sick leave:

"Q. Mayor McFall, are you aware of anyone who was ever paid for their sick time in full when they left the employment of Boston Heights?

"A. In full?

"Q. Yes.

"A. No, I'm not.

"Q. Are you aware of employees who were paid a portion of their sick time?

"A. I'm sure there were, yes.

"Q. That is done pursuant to state statute?

"A. Right."

██ We find that the trial court erred in concluding that Boston Heights was required to pay Heatwall for his unused sick leave. As an unincorporated village, Boston Heights had no statutory duty to pay its ex-employees an amount for accrued but unused sick leave. R.C. 124.39(B), which provides for compensation of unused sick leave, states, in relevant part:

"[A]n employee of a political subdivision covered by section 124.38 or 3319.141 of the Revised Code may elect, at the time of retirement * * *, to be paid in cash for one-fourth the value of his accrued but unused sick leave credit."

Employees of unincorporated villages are not covered under either R.C. 124.38 or R.C. 3319.141. As another Ohio appellate court has noted:

"R.C. 124.38 and 124.39 are part of the Ohio civil service provisions and, as such, are inapplicable to [an unincorporated village]. R.C. 124.38 and 124.39 are included in R.C. Chapter 124, which is commonly known as the Civil Service Act. * * * The physical placement of R.C. 124.38 and 124.39 within R.C. Chapter 124 along with all of the other civil service statutes logically mandates the conclusion that R.C. 124.38 and 124.39 are part of the civil service provisions * * *." *Doughton v. Mariemont* (1984), 16 Ohio App.3d 382, 382–383, 16 OBR 437, 437–438, 476 N.E.2d 720, 721.

Boston Heights, as an unincorporated village, incurred no obligations under R.C. Chapter 124. As such, it had no statutory duty to pay Heatwall for his unused sick leave.

Heatwall notes that the version of R.C. 124.39(C) in effect on the date of his original complaint placed no limits on how a political subdivision, such as Boston Heights, could adopt a policy for payment for an ex-employee's unused sick leave. Therefore, Heatwall argues, McFall's testimony proves that "Boston Heights

adopted a policy of paying terminated employees for their accumulated unused sick leave."

The version of R.C. 124.39(C) then in force read as follows:

"A political subdivision may adopt a policy allowing an employee to receive payment for more than one-fourth the value of his unused sick leave * * *. The political subdivision may also adopt a policy permitting an employee to receive payment upon a termination of employment other than retirement or permitting more than one payment to any employee." Am.Sub.H.B. No. 417, 141 Ohio Laws, Part II, 3645, 3646.

This statute specifically vests the setting of any sick leave policy in the political subdivision.

■ We reject Heatwall's argument that Boston Heights adopted a sick leave compensation policy as a result of McFall's testimony. As stated previously, R.C. 124.39 does not apply to the employees of unincorporated villages such as Boston Heights. Even if R.C. 124.39(C) did apply, Heatwall has presented no authority supporting his proposition that a mayor's testimony in a judicial proceeding may establish a policy which is binding on the mayor's jurisdiction. R.C. 733.24, which describes the powers of the mayor of a village, does not give a mayor authority to unilaterally adopt legislation which binds the village. The mayor's legislative power is limited to casting a tie-breaking vote if the legislative body is deadlocked. Custom cannot alter these statutory limits. *State ex rel. Myers v. Portage Cty.* (1992), 80 Ohio App.3d 584, 588, 609 N.E.2d 1333, 1335–1336. Because the mayor of a village has only this limited legislative authority under the Ohio Revised Code, we reject the notion that a mayor's testimony can constitute a legislative enactment which binds that mayor's village.

Boston Heights' first and second assignments of error are sustained.

### Cross–Assignment of Error

"The court abused its discretion when it failed to find that Robert Heatwall proved an amount due and owing to him for accumulated compensatory time."

Heatwall argues that the trial court abused its discretion by allegedly ignoring his written accounts of the compensatory time that he claimed to have accrued. Heatwall offered two written exhibits, a notebook and a calendar, on which he claimed to have tabulated the compensatory time allegedly due him. He claims that his written accounts were the only evidence presented on the issue and, therefore, that the trial court abused its discretion by reaching a result contrary to that suggested by those materials.

■ We find that the trial court had competent, credible evidence before it to conclude that Heatwall had not accrued any uncompensated compensatory time. Generally, this court will not overturn a judgment of a lower court where

that court's decision is supported by competent, credible evidence. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159. While Heatwall did offer his notebook and calendar, these items were not the only evidence presented on the issue. The current Boston Heights treasurer testified that she had analyzed all of Heatwall's time cards and had concluded that Heatwall was not due any compensation. McFall and the president pro tempore of the Boston Heights Council each testified that they had also examined Heatwall's time statements and could not find that Boston Heights owed Heatwall any money for compensatory time. Boston Heights also introduced Heatwall's time sheets into evidence. Ordinarily, this court will not second-guess the trial court's determinations as to weight and credibility. *Sykes Constr. Co. v. Martell* (Jan. 8, 1992), Summit App. Nos. 15034 and 15038, unreported, at 19, 1992 WL 2919. Where, as here, the trial court accepted one party's account of the facts as correct despite another party's contrary version, we will not reverse the trial court's findings. We find that the trial court had competent, credible evidence before it to conclude that Heatwall had not earned any uncompensated compensatory time and, therefore, was not entitled to be paid for this time. Accordingly, we overrule Heatwall's cross-assignment of error.

The judgment of the trial court is reversed in part and affirmed in part. Pursuant to App.R. 12(B), we enter judgment on behalf of Boston Heights on Heatwall's claim for compensation of his accrued but unused sick leave.

*Judgment affirmed in part*
*and reversed in part.*

REECE, P.J., and DICKINSON, J., concur.